Raymond v. Vaughan.

SAMUEL B. RAYMOND

v.

GEORGE M. VAUGHAN.

1. PARTNERSHIP—DISSOLUTION.—Insanity does not work a dissolution of a partnership *ipso facto.*

2. CONSERVATOR—RES ADJUDICATA.—The rendering of a final account and discharge of a conservator in the matter of his insane partner's estate in the county court, in which whole matter said conservator had neither inventoried nor brought into the account his ward's partnership interest, will not operate as a *res adjudicata,* upon a bill in chancery being filed against the conservator for an accounting by his partner after his recovery from insanity.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS MORAN, Judge, presiding. Opinion filed November 4, 1885.

This was a bill brought in the court below, Oct. 11, 1880, by the appellee, Vaughan, against the appellant, Raymond, as partner and trustee, for an accounting. There was a hearing

upon pleadings, proofs and master's report, resulting in a decree in favor of the former and against the latter, for the sum of $9,586.28, from which the latter appealed to this court.

It appears that for several years prior to September 15, 1874, Vaughan had been representing, as broker, in the wholesale sugar market of Chicago, the Franklin Sugar Refinery, of Philadelphia, Pa., whose business was there conducted by Harrison, Havemeyer & Co., residents of that city, and that Vaughan had not only enjoyed the confidence of that firm, but, from his business as such broker, had realized a very satisfactory income by way of commissions. It also appears that Raymond had, for several years prior to said date, been likewise engaged as broker in the wholesale sugar market of Chicago, he representing two or more sugar refineries in the East, from which he had realized large sums by way of commissions; that about September 15, 1874, the two, by agreement, entered into a sort of copartnership, and began business together; that by that agreement they were to occupy the same office and conduct their respective agencies or business as such brokers in their individual names, as before; that no partnership name should be adopted; that no time for the continuance of their relations should be fixed, but that from time to time the total amounts of their commissions should be divided between them—Vaughan receiving one third and Raymond two thirds; and they were to share losses and expenses in the same proportion. A copartnership relation is alleged in the bill, and expressly admitted by Raymond in his answer. It appears that the parties carried on their business together under that arrangement down to January, 1876; that during that period they had made several divisions of commissions received by them respectively, but that they had no actual settlement of all their matters, that, January 20, 1876, while their relations were subsisting as formerly, Vaughan was, upon proceedings duly commenced in the county court, adjudged to be temporarily insane, and committed to the hospital for the insane at Elgin, Ill. It further appears that in the order adjudging Vaughan to be insane, Raymond was appointed custodian

of his person until he should be taken to the asylum; that on the same day of that order Raymond filed and presented his petition to the county court for that purpose, and was appointed conservator of the estate of said Vaughan, with bond in the sum of $13,000; that letters of conservatorship were duly issued to him, March 13, 1876, at which date he filed an inventory in said court of the property of his ward. Vaughan was not discharged from the asylum until May, 1879. But it appears that June 6, 1878, Raymond presented his final account to the county court, and was upon consideration of it discharged by the court from the duties of his trust as such conservator. It appears that in neither the said inventory nor final account, did Raymond make any mention of said joint or partnership business. There was no evidence tending to show that Raymond, at any time between that of Vaughan becoming insane and his discharge from the asylum, signified, by any act or word, an election on his part to terminate the relations formed between them by the partnership agreement of Sept. 15, 1874. But the evidence shows that from and after Vaughan had been declared insane, Raymond continued to carry on the business of said partnership in all respects as it had been carried on before, with the exception of Vaughan's personal attention to it, until the discharge of the latter from the asylum. And it was shown by a clear preponderance of the evidence that Raymond recognized the continuance of Vaughan's interest in such business while he was so carrying it on after the latter had become insane. It further appears that after Vaughan left the asylum, and some time in May, 1879, he met Raymond in Philadelphia, and that through the intercession of Harrison, Havemeyer & Co. an arrangement was made by which Vaughan was to surrender, in favor of Raymond, the agency of the firm of Harrison, Havemeyer & Co., so far as related to Chicago, in the future; in consideration of which Raymond was to pay Vaughan $2,500, in monthly installments, and Harrison, Havemeyer & Co. agreeing to give Vaughan a like agency in the city of Baltimore, in place of that in Chicago which he had formerly had. In making that arrangement no mention was made of any matters relat

Raymond v. Vaughan.

ing to the business carried on in Chicago during Vaughan's lunacy.

Messrs. FLOWER, REMY & GREGORY, for appellant; that the relation between the parties was not a partnership, cited Blue v. Leathers, 15 Ill. 31; Snell v. DeLand, 43 Id. 323; Adams v. Funk, 53 Id. 219; Smith v. Knight, 71 Id. 198; Irvin v. Nashville, etc., Ry. Co., 92 Id. 103.

Even though it should be conceded that the relation between the parties was a partnership one, it was dissolvable at will, as no time was agreed upon for its continuance: 1 Lindley on Partnership, p. 220; Carlton v. Cummings, 51 Ind. 478; McElroy v. Lewis, 76 N. Y. 373; Lawrence v. Robinson, 4 Col. 567.

A dissolution of a partnership at will may be inferred from circumstances, although no notice to dissolve has been given, and the rule applies, although one of the parties be a lunatic: Wellerah v. Kean, 27 Beav. 236; Robertson v. Lockie, 15 Sim. 285; Southwick v. Allen, 11 Vt. 75; Grover v. Hall, 3 H. & J. 43; Bouche v. Pendergast, 3 Ib. 33; Emerson v. Parsons, 2 Sweeney, 447; Parsons on Partnership, pp. 418 and 419.

Where the decree is in the nature of proceedings *in rem*, as is generally the case in matters of probate and administration, it is conclusive against all the world: 1 Greenl. on Ev., Sec. 550; Wells on Res Adjudicata, Sec. 426; Smith v. Sims, 77 Mo. 269; Cecil v. Cecil, 19 Md. 79; Caujollie v. Ferrie, 13 Wall. 465; Chippen v. Dexter, 13 Gray, 330.

Mr. JOHN GIBBONS, for appellee; as to the relation of the parties and the duties arising therefrom, cited Townsend v. Townsend, 1 Giff. 201; Wedderburn v. Wedderburn, 22 Beav. 84; Sticking v. Sewell, 1 Myln. & Cr. 8; Heathcock v. Hulme, 1 Jac. & W. 122; Morris' Appeal, 71 Pa. St. 106; Sholer v. Trowbridge, 1 Len. (N. J.) 595; Lewin on Trusts (7th Ed.), 253, 254, 298, 299, 312; Freeman v. Freeman, 136 Mass. 260; Cook v. Collingridge, 1 Jac. 608.

The *cestui que trust* may still inquire into the administration

of the trustee after his discharge:  Wright's Trusts, 3 K. & J. 419; Clark v. Deveaux, 1 S. C. 172; Anson v. Osborne, 6 Ves. 455; Cranshay v. Collins, 15 Ves. 218.

McALLISTER, J.  The first point made by appellant's counsel is, that no copartnership relation ever existed between these parties, and that consequently none existed at the time that appellee became insane.  The answer to that position is, that the formation of a partnership between them on or about Sept. 15, 1874, and its continuance to the time of appellee's insanity and while he was in the asylum, are alleged in appellee's bill, and its formation and continuance until appellee became insane are expressly admitted by appellant in his answer to that bill.  The latter is therefore precluded from questioning the existence of the partnership at the time appellee became insane.  But in connection with that position, appellant's counsel say even if a partnership did exist, it was one determinable at the will of either party.  We understand that the partnership between these parties was of that character.  But counsel further say, that a dissolution of a partnership at will may be inferred from circumstances, although no notice to dissolve has been given, and the rule applies although one of the partners be a lunatic.

Suppose the correctness of that proposition be conceded, does it not logically follow that the converse of it must also be true, and that the continuance of the partnership after appellee's insanity may likewise be inferred from circumstances? We have no doubt that it may, and that we regard as a determinative principle in one aspect of this case.  Counsel, however, not taking that view, supplement their proposition with the further one that the adjudication of appellee's insanity *ipso facto* dissolved the partnership.  Chancellor Kent says: " Insanity does not work a dissolution of partnership *ipso facto.* It depends upon circumstances under the sound discretion of the court of chancery." · 3 Kent's Com., Holmes' Ed., 58 Marg. 65; Story on Part., § 295; Ewell's Lindley on Part., Vol. I, p. 224.

We can not afford the space requisite to an analysis of the

authorities bearing upon that proposition, and it is unnecessary, for no case has been cited, and we venture to say that none can be found, which holds that where one partner is adjudged to be affected with temporary insanity, and the same party chooses to continue the partnership notwithstanding, and has made large profits, and is called upon in a court of chancery by such formerly insane party, after restoration to reason, to account to him upon equitable principles for said profits, such same party may defend against the claim by setting up that the adjudication of insanity *ipso facto* dissolved the partnership. Such a decision would be against natural justice, and shock the moral sense of the common average of mankind.

Now, what are the circumstances as respects this part of the case? These parties had been copartners, doing a profitable business together, from about Sept. 15, 1874, to January 20, 1876, when an adjudication was made in the county court, that appellee was affected with temporary insanity. In that very order appellant was made custodian of his person, until he should be committed to the custody of the warden of the State Hospital for the Insane. Appellant upon his own petition was thereupon duly appointed conservator of his estate. He thereby voluntarily took upon himself a most sacred judiciary relation to appellee. That relation, upon the clearest doctrine of equity, not only disqualified appellant, but positively prohibited him from securing to himself any pecuniary interest or advantage, adverse to those of appellee, his ward. Occupying that position, appellant, having theretofore in no manner signified, by act, word or circumstance, his election to terminate the partnership, goes right along with its business as before, giving out, from time to time, by express declarations, that he was carrying on that business for the benefit of appellee as well as himself. Under the relations subsisting between these parties, the fact being conceded by appellant that he actually continued to carry on the business the same as before, substantially, very slight circumstances would be sufficient, if any evidence at all were necessary, to show that he was carrying it on under the partnership relations. The good will was an element of value, and even though there had been

a dissolution, the appellant might be required to account. Pine v. Ormsbee, 2 Abb. Pr., N. S. 375; Cranshaw v. Collins, 15 Ves. 218. As to good will of the business, see 2 Ewell's Lind. on Part. 859.

The next position taken in argument by appellant's counsel is, that the discharge of appellant by the county court, upon rendering his final account there as conservator, was a proceeding *in rem*, and, so long as it remains unreversed, is a complete bar to the relief sought by this bill, upon the principles of *res adjudicata*. That proceeding, so far as it relates to the adjudication as to the *status* of appellee, was, in our opinion, in the nature of a proceeding *in rem*. But the matters upon which the right to and claim for an accounting are based, were of a wholly different nature. This claim was not included in the inventory which appellant made as conservator, nor mentioned in his final accounting, upon which he was discharged. Passing upon it, was in no respect necessary to the exercise of the jurisdiction of the court in the first instance, nor was it directly involved, or a necessary incident to any adjudication made. It was a matter of mere private individual right between these two parties, over which a court of chancery has jurisdiction, and over which, if the county court had any jurisdiction, it was in no sense exclusive. Besides, appellee was at the time confined in a lunatic asylum, and had no notice, actual or constructive. The distinction between those matters which are necessarily involved in a proceeding *in rem*, or in one in the nature of a proceeding *in rem*, as to which the decree is conclusive against all the world, and matters *inter partes*, or of mere private litigation, is recognized by the authorities, and has its foundation in the nature of things. 2 Smith's Leading Cases, 7th Am. Ed., 632; 1 Greenleaf on Ev., § 550.

To hold a claim barred by a proceeding in which it was in no wise involved, and of which the party to be estopped had no kind of notice, would be to subvert and trample upon some of the most essential, fundamental principles, upon which the doctrine of the conclusiveness of judgments and decrees is based; because appellee never had his day in court as to this claim.

We are of opinion that the transaction between the parties in May, 1879, at Philadelphia, falls entirely short of a settlement of the claim, so as to bar appellee's right to an accounting. This claim and the matters out of which it arises, were none of them mentioned by either party. Being of opinion that the evidence supports the decree, and that the points made against it are not well taken, it must be affirmed.

Decree affirmed.